GRIFFITH H. HAYES, ESQ.
Nevada Bar No. 7374
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
COOKSEY, TOOLEN, GAGE, DUFFY & WOOG, P.C.
3930 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Telephone:    702-949-3100
Facsimile:    702-949-3104
ghayes@cookseylaw.com
amuehlbauer@cookseylaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LEE A. HAMPE, Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff(s),<br><br>                    v.<br><br>PDL BIOPHARMA, INC., JOHN P. MCLAUGHLIN, PETER S. GARCIA, and DAVID MONTEZ,<br><br>                                        Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Lee A. Hampe ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

1  announcements made by Defendants, United States Securities and Exchange Commission ("SEC")

2  filings, wire and press releases published by and regarding PDL BioPharma, Inc. ("PDL BioPharma"

3  or the "Company"), analysts' reports and advisories about the Company, and information readily

4  obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the

5  allegations set forth herein after a reasonable opportunity for discovery.

<u>**NATURE OF THE ACTION**</u>

8       1.     This is a federal securities class action brought on behalf of a class consisting of all

9  persons and entities, other than Defendants (defined below) and their affiliates, who purchased or

10  otherwise acquired the securities of PDL BioPharma between November 6, 2013 and September 16,

11  2014, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies against PDL BioPharma and

12  certain of its officers and directors for violations of the federal securities laws under the Securities

13  Exchange Act of 1934 (the "Exchange Act").

14       2.     PDL BioPharma manages a portfolio of patents and royalty assets.  The Company is

15  involved in the humanization of monoclonal antibodies and the discovery of a new generation of

16  targeted treatments for cancer and immunologic diseases.  The Company was formerly known as

17  Protein Design Labs, Inc. and changed its name to PDL BioPharma, Inc. in 2006. PDL BioPharma,

18  Inc. was founded in 1986, is headquartered in Incline Village, Nevada, and trades on the NASDAQ

19  Global Select Market ("NASDAQ") under the ticker symbol "PDLI."

20       3.     The Company owns patents in the United States and elsewhere, covering the

21  humanization of antibodies, which the Company refers to as Queen et al. patents.  The Queen et al.

22  patents cover, among other things, humanized antibodies, methods for humanizing antibodies,

23  polynucleotide encoding in humanized antibodies and methods of producing humanized antibodies.

24  However, final patent expiry for the Queen et al. patents is set for December 2014, jeopardizing the

25  Company's ability to pay dividends to its shareholders going forward.

26       4.     Recently, however, the Company has announced the strategic decision to continue its

27  operations post expiration of the Queen et al. patents and to continue the strategy of pursuing new

28  income generating assets so as to extend its ability to pay dividends to its shareholders.

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

5.      As part of the Company's ongoing strategy, on October 21, 2013, the Company issued a press release announcing the acquisition of the rights to receive royalties and milestones payable on sales of Type 2 diabetes products licensed by Depomed in exchange for a $240.5 million cash payment.  Pursuant to the transaction, PDL BioPharma would receive all royalty and milestone payments due under the agreements until it has received payments equal to two times the cash payment made to Depomed, after which all payments received will be shared evenly between PDL BioPharma and Depomed.  At the time of the transaction, the Company classified the acquired asset as an intangible asset.

6.      Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance.  Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) the Company was overstating its: (i) total revenues; (ii) royalty revenues; (iii) net income; and (iv) net cash provided by operating activities; (2) the Company was understating its operating expenses; (3) the Company failed to properly classify royalty and milestone payments due under an agreement with Depomed; and (4) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

7.      On May 12, 2014, the Company filed a Form 10-Q with the SEC reiterating the announced results for the first quarter ended March 31, 2014, and also disclosing that PDL BioPharma was currently engaged in ongoing discussions with the SEC staff after receiving a comment letter to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 that requested additional information about the Company's accounting for the royalty purchase and sale agreement with Depomed.  At the time, the Company classified the asset as an intangible asset, but was being asked to support its position and explain why it is not a financial asset.

8.      On August 8, 2014, the Company issued a press release announcing that it had filed a Form 12b-25 Notification of Late Filing with the SEC allowing for a five-day extension to file its Quarterly Report on Form 10-Q for the period ended June 30, 2014.  According to the press release,

the Company could not finalize its financial statements for the quarter ended June 30, 2014, due to additional time necessary to address SEC comments and finalize its review related to *the change in the accounting treatment of the acquisition of Depomed royalty rights*.  As a result of the delay in filing the quarterly report, PDL BioPharma postponed its second quarter earnings release call, originally scheduled for Monday, August 11, 2014.

9.    Finally, on September 16, 2014, after the market closed, the Company filed a Form 8-K with the SEC announcing that on September 11, 2014, PDL BioPharma was orally notified by its independent registered accounting firm, Ernst & Young LLP ("EY") that it was resigning effective September 11, 2014. The resignation was confirmed in a letter delivered to the Company on September 15, 2014.

10.    On this news, PDL BioPharma's stock plummeted $1.17 per share to close at $8.48 per share on September 17, 2014, a one-day decline of over 12% on heavy trading volume.

11.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

14.    Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

15.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

facilities of the national securities exchange.

## PARTIES

16.    Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the securities of PDL BioPharma during the Class Period at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17.    Defendant PDL BioPharma manages a portfolio of patents and royalty assets.  The company is involved in the humanization of monoclonal antibodies and the discovery of a new generation of targeted treatments for cancer and immunologic diseases.  PDL BioPharma was founded in 1986 and is headquartered in Incline Village, Nevada.

18.    Defendant John P. McLaughlin ("McLaughlin") has served as the President and Chief Executive Officer of the Company at all relevant times.  Prior to the Class Period, defendant McLaughlin had also served as the Acting Chief Financial Officer at various times through April 30, 2013, and the Acting Principal Accounting Officer until July 23, 2013.

19.    Defendant Peter S. Garcia ("Garcia") has served as the Vice President and Chief Financial Officer of the Company at all relevant times, since joining the Company on May 1, 2013.

20.    Defendant David Montez ("Montez") has served as the Controller and Chief Accounting Officer of the Company at all relevant times, since joining the Company on July 24, 2013.

21.    The defendants named above in ¶¶18–20 are referred to herein as the "Individual Defendants."

22.    Defendant PDL BioPharma and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.    PDL BioPharma purports to have pioneered the humanization of monoclonal antibodies.  Today, PDL BioPharma claims to be focused on intellectual property asset management, investing in income generating assets and maximizing the value of its patent portfolio and related

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

assets. The Company receives royalties based on sales of humanized antibody products marketed today and may also receive royalty payments on additional humanized antibody products that are manufactured or launched before final patent expiry in December 2014 or which are otherwise subject to a royalty for licensed know-how under the Company's agreements. Under PDL BioPharma's current licensing agreements, the Company is entitled to receive a flat-rate or tiered royalty based upon licensees' net sales of covered antibodies.

24. Recently, however, the Company announced the strategic decision to continue its operations post expiration of the Queen et al. patents and to continue the strategy of pursuing new income generating assets so as to extend its ability to pay dividends to its shareholders.

25. As part of that strategy, on October 21, 2013, the Company issued a press release announcing the acquisition of the rights to receive royalties and milestones payable on sales of Type 2 diabetes products licensed by Depomed in exchange for a $240.5 million cash payment. Pursuant to the transaction, PDL BioPharma would receive all royalty and milestone payments due under the agreements until it has received payments equal to two times the cash payment made to Depomed, after which all payments received will be shared evenly between PDL BioPharma and Depomed. At the time of the transaction, the Company classified the acquired asset as an intangible asset.

**Materially False and Misleading**
**Statements Issued During the Period**

26. On November 6, 2013, the first day of the Class Period, the Company issued a press release announcing the financial results for the third quarter and nine months ended September 30, 2013. The press release stated, in part:

> Total revenues for the third quarter of 2013 increased 14 percent to $97.3 million from $85.2 million reported in the third quarter of 2012. For the first nine months of 2013, total revenues increased 15 percent to $332.8 million from $288.5 million reported in the comparable period of 2012.

> Royalty revenues for the third quarter of 2013 are based on second quarter 2013 product sales by PDL's licensees. The year- to-date royalty revenue growth is driven by increased sales of Avastin®, Herceptin®, Lucentis®, Perjeta®, Kadcyla®, and Actemra® by PDL's licensees in the fourth quarter of 2012 and first and second quarters of 2013. Net sales of Avastin, Herceptin, Lucentis, Xolair®, Perjeta, and

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

Kadcyla are subject to a tiered royalty rate except in the case when the product is ex-U.S. manufactured and sold, in which case it is subject to a flat three percent royalty rate.

General and administrative expenses for the third quarter of 2013 were $7.9 million, compared with $5.6 million in the same quarter of 2012. For the nine months ended September 30, 2013, general and administrative expenses were $21.9 million compared to $17.7 million in the comparable period of 2012. The increase in expenses for both the quarter and nine months ended September 30, 2013, was a result of increased legal expenses related to ongoing litigation.

Net income for the third quarter of 2013 was $56.2 million, or $0.36 per diluted share, as compared with net income of $48.6 million, or $0.32 per diluted share, in the same quarter of 2012. The increase in net income in the third quarter is primarily due to a 13 percent increase in royalty revenues. Net income for the first nine months of 2013 was $203.4 million, or $1.31 per diluted share, as compared with net income of $162.3 million, or $1.08 per diluted share, in the same period of 2012.

Net cash provided by operating activities in the first nine months of 2013 was $209.7 million, compared with $158.6 million for the first nine months of 2012. At September 30, 2013, PDL had cash, cash equivalents and investments of $326.5 million, compared with $148.7 million at December 31, 2012. The increase was primarily attributable to net cash provided by operating activities of $209.7 million and repayment of notes receivable of $58.1 million, offset in part by payment of dividends of $62.9 million and cash advanced on notes receivable of $48.7 million.

"We are gratified by the continued success of our asset acquisition strategy, including the four additional transactions completed in the past month, and believe that—with ROI at top-of-mind—we are continuing to add long term value for the company and our stockholders," stated John P. McLaughlin, president and chief executive officer of PDL. "Our goal is to be the financial partner of choice to leading life science companies and other institutions seeking to access non-dilutive capital, and we are actively looking to expand our portfolio.  With the conclusion of the four recent transactions, PDL has deployed $368 million in capital in 2013 and $496 million in total to acquire new income generating assets to support our dividend payments."

27.     That same day, the Company filed a Form 10-Q with the SEC which was signed by defendants McLaughlin, Garcia, and Montez, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants McLaughlin and Garcia, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On March 3, 2014, the Company issued a press release announcing results for the

fourth quarter and full year ended December 31, 2013.  The press release stated, in part:

Total revenues in 2013 increased 18 percent to $442.9 million from $374.5 million in 2012. For the fourth quarter of 2013, total revenues were $110.1 million, compared to $86.0 million in the fourth quarter of 2012. Royalty revenues for the fourth quarter of 2013 are based on third quarter 2013 product sales by PDL's licensees to the Queen et al. patents and on Depomed's Glumetza® royalties related to October and November 2013 U.S. sales.  PDL recognized $11.2 million in revenue related to the Depomed royalties in the fourth quarter of 2013.

The full year 2013 royalty revenue growth over the full year 2012 is driven by increased sales of Avastin®, Herceptin®, Lucentis®, Xolair®, Perjeta®, Kadcyla®, Tysabri®, and Actemra® by PDL's licensees, along with the addition of the royalty payments from PDL's purchase of Depomed's diabetes-related royalties. Net sales of Avastin, Herceptin, Lucentis, Xolair, Perjeta, and Kadcyla were subject to a tiered royalty rate except in the case when the product is ex-U.S. manufactured and sold, in which case it was subject to a flat three percent royalty rate. Under the terms of a settlement agreement, entered into on January 31, 2014, and effective retroactively to August 15, 2013, Genentech will pay a fixed royalty rate of 2.125 percent on worldwide sales of all licensed products, as compared to the previous tiered royalty rate in the U.S and the fixed rate on all ex-U.S based manufactured and sold licensed products.  The retroactive change in royalty rate from August 15, 2013, to December 31, 2013, will be recognized as royalty revenue by PDL in the first quarter of 2014.

Operating expenses in 2013 were $35.4 million, compared with $25.5 million in 2012. The increase in expenses for the year ended December 31, 2013, was a result of the amortization for the Depomed intangible asset, an increase in professional services for other income generating assets, and increased legal expenses related to the settled litigation. For the fourth quarter of 2013, operating expenses were $13.5 million compared with $7.7 million for the same period in 2012. The increase in expenses for the quarter ended December 31, 2013, was a result of the Depomed intangible asset amortization.

Net income in 2013 was $264.5 million, or $1.66 per diluted share, as compared with net income in 2012 of $211.7 million, or $1.45 per diluted share. Net income for the fourth quarter of 2013 was $61.1 million, or $0.39 per diluted share, as compared with net income of $49.4 million for the same period of 2012, or $0.34 per diluted share. The increase in net income in the fourth quarter is primarily due to a 27 percent increase in royalty revenues.

Net cash provided by operating activities in 2013 was $270.9 million, compared with $210.2 million in 2012. At December 31, 2013, PDL had cash, cash equivalents and investments of $99.5 million, compared with $148.7 million at December 31, 2012. The decrease was primarily attributable to the purchase of the Depomed intangible asset of $241.3 million, cash advanced on notes receivable of $148.7 million, payment of dividends of $84.0 million, offset in part by net cash provided by operating activities of $270.9 million and repayment of notes receivable of $58.1 million.

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

29.     That same day, the Company filed a Form 10-K with the SEC which was signed by defendants McLaughlin, Garcia, and Montez, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-K contained signed SOX certifications by defendants McLaughlin and Garcia, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     On May 12, 2014, the Company issued a press release announcing results for the first quarter ended March 31, 2014.  The press release stated, in part:

Total revenues for the first quarter of 2014 increased 52 percent to $139.7 million from $91.8 million in the first quarter of 2013. Royalty revenues for the first quarter of 2014 are based on fourth quarter 2013 product sales by PDL's licensees to the Queen et al. patents, royalty payments from PDL's purchase of Depomed's diabetes-related royalties, and include a one-time $5 million retroactive payment from Genentech related to our settlement agreement.

The first quarter 2014 royalty revenue growth over first quarter of 2013 is driven by increased sales of Avastin®, Herceptin®, Xolair®, Perjeta®, Kadcyla®, and Actemra® by PDL's licensees, the addition of $23.6 million in royalty revenue from PDL's purchase of Depomed's diabetes-related royalties, the $5 million retroactive payment from Genentech, and an increase in royalties from the Genentech settlement as a result of a fixed royalty rate of 2.125 percent on worldwide sales of all licensed products in 2014, as compared to the previous lower blended rate based upon a tiered royalty rate in the U.S and the fixed rate on all ex-U.S based manufactured and sold licensed products.

Operating expenses in the first quarter of 2014 were $16.5 million, compared with $7.2 million in the first quarter of 2013. The increase of expenses in the quarter ended March 31, 2014, was a result of the non-cash amortization expense of $11.9 million for the Depomed royalty and milestone purchase, offset in part by decreased legal expenses from the settlement of legal proceedings with Genentech.

Net income in the first quarter of 2014 was $72.9 million, or $0.44 per diluted share, as compared with net income in the first quarter of 2013 of $53.5 million, or $0.36 per diluted share. The increase in net income in the first quarter is primarily due to the increase in royalty revenues.

Net cash provided by operating activities in the first quarter of 2014 was $91.8 million, compared with $52.9 million in the first quarter of 2013. At March 31, 2014, PDL had cash, cash equivalents and investments of $337.6 million, compared with $99.5 million at December 31, 2013. The increase was primarily attributable to proceeds from the issuance of convertible notes of $300.0 million, proceeds from the

Cooksey, Toolen, Gage, Duffy & Woog

issuance of warrants of $11.4 million, and net cash provided by operating activities of $91.8 million, offset in part by cash advanced on notes receivable of $50.0 million, purchase of call options of $31.0 million, repurchase of convertible notes of $29.9 million, payment of dividends of $24.0 million, repayment of a portion of the term loan of $18.8 million, and payment of debt issuance costs related to the issuance of convertible notes of $9.8 million.

31.     That same day, the Company filed a Form 10-Q with the SEC which was signed by defendants McLaughlin, Garcia, and Montez, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed SOX certifications by defendants McLaughlin and Garcia, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     The statements referenced in ¶¶ 26 – 31 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, prospects and performance, which were known to Defendants or recklessly disregarded by them.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) the Company was overstating its: (i) total revenues; (ii) royalty revenues; (iii) net income; and (iv) net cash provided by operating activities; (2) the Company was understating operating expenses; (3) the Company failed to properly classify royalty and milestone payments due under an agreement with Depomed; and (4) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Slowly Emerges**

33.     In the Form 10-Q filed with the SEC on May 12, 2014, the Company disclosed that PDL BioPharma was currently engaged in ongoing discussions with the SEC staff after receiving a comment letter to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 that requested additional information about the Company's accounting for the royalty purchase and sale agreement with Depomed.  At the time, the Company classified the asset as an

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

intangible asset, but was being asked to support its position and explain why it is not a financial asset

34.     On August 8, 2014, the Company issued a press release announcing that it had filed a Form 12b-25 Notification of Late Filing with the SEC allowing for a five-day extension to file its Quarterly Report on Form 10-Q for the period ended June 30, 2014.  According to the press release, the Company could not finalize its financial statements for the quarter ended June 30, 2014, due to additional time necessary to address SEC comments and finalize its review related *to a change in the accounting treatment of the acquisition of Depomed royalty rights*.  As a result of the delay in filing the quarterly report, PDL BioPharma postponed its second quarter earnings release call, originally scheduled for Monday, August 11, 2014.

35.     On August 18, 2014, the Company issued press release announcing delayed results for the second quarter and six months ended June 30, 2014.  The press release stated, in part:

> Total revenues for the second quarter of 2014 increased approximately 10 percent to $162.8 million from $148.5 million in the second quarter of 2013. Revenues for the second quarter of 2014 include royalty payments from PDL's licensees to the Queen et al. patents, net royalty payments from Depomed, the change in fair value of the Depomed asset, and interest revenue from notes receivable debt financings to late stage healthcare companies. The revenue growth in the second quarter of 2014 is offset by the timing differences of a flat royalty rate on the Genentech related products in 2014 versus a tiered rate in 2013.
>
> The second quarter 2014 royalty payment received from Genentech products was for worldwide net sales in the first quarter 2014. Prior to 2014, PDL's second quarter Genentech royalty revenue was historically the highest amount of any quarter because the applicable tiered royalty rate was three percent. However, as aggregate Genentech net sales increased with each subsequent quarter, the tiered royalty rate declined, dropping to one percent in PDL's third, fourth and first quarters. As a result, the blended royalty rate for all of 2013 for Genentech products was 1.9 percent. The settlement with Genentech resulted in a single fixed royalty rate of 2.125 percent, which results in more uniform royalty revenue on a quarter to-quarter basis in the current fiscal year. Thus, this decrease in Queen et al. related royalties between the second quarters of 2013 and 2014 is a function of the transition to the new fixed royalty rate, which new royalty rate is anticipated to result in greater royalties to PDL when measured on an annual basis.
>
> In the second quarter of 2014, PDL recorded a change in accounting related to its acquisition of royalty rights from Depomed.   As part of this change, PDL has elected to measure these assets at fair value.  The change in fair value along with net cash royalties received from Depomed is currently presented as a component of "royalty rights - change in fair value" in PDL's income statements.  Of the $34.5 million

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

recognized in royalty rights for the quarter ended June 30, 2014, $25.8 million were net cash royalty receipts from Depomed and $8.7 million was the change in fair value including prior period adjustments.  In recognition of its transitioning business model to acquire new revenue generating assets, the Company reclassified $12.6 million in interest income in the quarter ended June 30, 2014 related to interest from its notes receivable to interest revenue, which compares to $4.9 million in interest revenue for the second quarter of 2013.

Total revenues for the first six months of 2014 increased 23 percent to $299.6 million, compared with $244.1 million for the first six months of 2013. The increase for the six month period of 2014 over 2013 is primarily driven by the addition of the royalty payments from PDL's purchase of Depomed's diabetes-related royalties, increased royalties in the first two quarters of 2014 related to sales of Xolair®, Kadcyla®, Perjeta®, and Actemra®, along with a higher fixed royalty rate in 2014 over the blended fixed and tiered 2013 rate, a $13.0 million increase in interest revenue related to acquisitions of new revenue generating assets, and a $5.0 million retroactive payment in first quarter of 2014 related to our settlement agreement with Genentech, offset by a higher foreign exchange loss and higher rebate paid to Novartis AG for Lucentis.

Operating expenses in the second quarter of 2014 were $6.9 million, compared with $6.8 million in the second quarter of 2013. Operating expenses in the first six months of 2014 were $11.5 million, compared with $14.0 million in the first six months of 2013. The decrease in operating expenses for the first six months ended June 30, 2014, compared to the first six months ended June 30, 2013, was primarily due to a decrease in litigation legal expenses, partially offset by an increase in acquisition due diligence professional services and compensation.

Net income in the second quarter of 2014 was $92.1 million, or $0.52 per diluted share, as compared with net income in the second quarter of 2013 of $93.7 million, or $0.62 per diluted share. Net income for the first six months of 2014 was $164.9 million, or $0.94 per diluted share, as compared with net income in the first six months of 2013 of $147.2 million, or $0.96 per diluted share.

Net cash provided by operating activities in the first six months of 2014 was $146.2 million, compared with $162.7 million in the first six months of 2013. At June 30, 2014, PDL had cash, cash equivalents and investments of $217.8 million, compared with $99.5 million at December 31, 2013. The increase was primarily attributable to net cash provided by the proceeds from the February 2018 Notes issuance of $300.0 million, proceeds from royalty rights - at fair value of $49.5 million, proceeds from warrant issuances of $11.4 million, and operating activities of $146.2 million, offset in part by cash advanced on notes receivable of $215.0 million, call option purchases of $31.0 million, Series 2012 Notes repurchases of $29.9 million, dividend payments of $48.1 million, term loan principal payments of $37.5 million, royalty right purchases of $15.5 million, and debt issuance costs of $9.8 million related to our February 2018 Notes.

36.     That same day, the Company filed a Form 10-Q with the SEC which was signed by

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

defendants McLaughlin, Garcia, and Montez, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed SOX certifications by defendants McLaughlin and Garcia, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37.   The statements referenced in ¶¶ 35 – 36 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, prospects and performance, which were known to Defendants or recklessly disregarded by them.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (1) the Company was overstating: (i) total revenues; (ii) royalty revenues; (iii) net income; and (iv) net cash provided by operating activities; (2) the Company was understating operating expenses; and (3) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times

### **The Full Truth Emerges**

38.   On September 16, 2014, after the market closed, the Company filed a Form 8-K with the SEC announcing that on September 11, 2014, PDL BioPharma was orally notified by its independent registered accounting firm, EY, that it was resigning effective September 11, 2014. The resignation was confirmed in a letter delivered to the Company on September 15, 2014.

39.   On this news, PDL BioPharma's stock plummeted $1.17 per share to close at $8.48 per share on September 17, 2014, a one-day decline of over 12%, on heavy trading volume.

40.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

41.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired PDL BioPharma securities during the Class Period (the "Class"); and were damaged upon

1  the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein,

2  the officers and directors of the Company, at all relevant times, members of their immediate families

3  and their legal representatives, heirs, successors or assigns and any entity in which Defendants have

4  or had a controlling interest.

5      42.    The members of the Class are so numerous that joinder of all members is

6  impracticable.  Throughout the Class Period, PDL BioPharma securities were actively traded on the

7  NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can

8  be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

9  thousands of members in the proposed Class.  Record owners and other members of the Class may

10  be identified from records maintained by PDL BioPharma or its transfer agent and may be notified

11  of the pendency of this action by mail, using the form of notice similar to that customarily used in

12  securities class actions.

13      43.    Plaintiff's claims are typical of the claims of the members of the Class as all members

14  of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is

15  complained of herein.

16      44.    Plaintiff will fairly and adequately protect the interests of the members of the Class

17  and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has

18  no interests antagonistic to or in conflict with those of the Class.

19      45.    Common questions of law and fact exist as to all members of the Class and

20  predominate over any questions solely affecting individual members of the Class.  Among the

21  questions of law and fact common to the Class are:

22

23      •   whether the federal securities laws were violated by Defendants' acts as
        alleged herein;

24

25      •   whether statements made by Defendants to the investing public during the
        Class Period misrepresented material facts about the business, operations and
26      management of PDL BioPharma;

27      •   whether the Individual Defendants caused PDL BioPharma to issue false and
        misleading financial statements during the Class Period;

28      •   whether Defendants acted knowingly or recklessly in issuing false and

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

misleading financial statements;

- whether the prices of PDL BioPharma securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- PDL BioPharma securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold PDL BioPharma securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption

of reliance established by the Supreme Court in Affiliated Ute Citizens of the State of Utah v. United States, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CLAIM FOR RELIEF

**(Violations of Section 10(b) of The Exchange Act and Rule 10b-5 - Against All Defendants)**

50.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of PDL BioPharma securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire PDL BioPharma securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for PDL BioPharma securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about PDL BioPharma's finances and business prospects.

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

54.     By virtue of their positions at PDL BioPharma, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.   Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.   In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of PDL BioPharma securities from their personal portfolios.

56.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.   As the senior managers and/or directors of PDL BioPharma, the Individual Defendants had knowledge of the details of PDL BioPharma's internal affairs.

57.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of PDL BioPharma. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to PDL BioPharma's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of PDL BioPharma securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning PDL BioPharma's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired PDL BioPharma securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

58.     During the Class Period, PDL BioPharma securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of PDL BioPharma securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of PDL BioPharma securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of PDL BioPharma securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**SECOND CLAIM FOR RELIEF**

**(Violations of Section 20(a) of The Exchange Act - Against The Individual Defendants)**

61.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     During the Class Period, the Individual Defendants participated in the operation and management of PDL BioPharma, and conducted and participated, directly and indirectly, in the conduct of PDL BioPharma's business affairs.  Because of their senior positions, they knew the adverse non-public information about PDL BioPharma's misstatement of income and expenses and false financial statements.

63.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to PDL BioPharma's financial condition and results of operations, and to correct promptly any public statements issued by PDL BioPharma which had become materially false or misleading.

64.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which PDL BioPharma disseminated in the marketplace during the Class Period concerning PDL BioPharma's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause PDL BioPharma to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of PDL BioPharma within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of PDL BioPharma securities.

65.     Each of the Individual Defendants, therefore, acted as a controlling person of PDL BioPharma. By reason of their senior management positions and/or being directors of PDL BioPharma, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, PDL BioPharma to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of PDL BioPharma and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by PDL BioPharma.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

400.0000  2592918.2

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff hereby demands a trial by jury.

Dated:  September 18, 2014          COOKSEY, TOOLEN, GAGE, DUFFY & WOOG, P.C

by:  ___/s/ *Andrew R. Muehlbauer*_____
GRIFFITH H. HAYES, ESQ.
Nevada Bar No. 7374
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
3930 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Telephone: 702-949-3100/Facsimile: 702-949-3104
ghayes@cookseylaw.com
amuehlbauer@cookseylaw.com

POMERANTZ LLP
JEREMY A. LIEBERMAN
FRANCIS P. MCCONVILLE
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100/Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
fmcconville@pomlaw.com

POMERANTZ LLP
PATRICK V. DAHLSTROM
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181/Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

BRONSTEIN GEWIRTZ &
GROSSMAN LLP
Peretz Bronstein
60 E. 42nd Street, Suite 4600
New York, New York 10165
Telephone: 212-697-6484/Facsimile: 212-697-7296

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, Lee A. Hampe, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against PDL BioPharma, Inc. ("PDL BioPharma" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire PDL BioPharma securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired PDL BioPharma securities during the class period, including providing testimony at deposition and trial, if necessary.   I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in PDL BioPharma securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed _____9/18/14_____
               (Date)


                                    _____
                                              (Signature)


             Lee A. Hampe   _____
                                    (Type or Print Name)

PDL BIOPHARMA, INC. (PDLI)                    Hampe, Lee A.

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 06/26/2014 | PUR | 1,000 | $9.7400 |
| 07/07/2014 | PUR | 1,000 | $9.7400 |